IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| ROBERT HIGHTOWER, individually and on behalf of all others similarly situated, | ) ) ) | Case No.: 1:25-cv-1921 |
| Plaintiff(s), | ) ) | |
| vs. | ) ) | |
| | ) | CLASS ACTION COMPLAINT |
| TRIMBLE, INC., and ORACLE CORPORATION | ) ) ) | |
| | ) | JURY TRIAL DEMANDED |
| Defendant(s). | ) ) ) | |

Plaintiff, Robert Hightower ("Plaintiff") brings this Class Action Complaint against Defendants, Trimble, Inc. ("Trimble") and Oracle Corporation ("Oracle") or ("Defendants") individually, and on behalf of all others similarly situated, and allege, upon personal knowledge as to Plaintiff's own actions and to counsels' investigation, and upon information and belief as to all other matters, as follows:

## JURISDICTION & VENUE

1. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1332, because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from each Defendant.

2. This Court has personal jurisdiction over Defendants because Oracle Corporation's headquarters and principal place of business is in this District and both Defendants regularly conduct business in this District and have sufficient minimum contacts in this District.

3.     Venue is proper under 28 U.S.C §1391(b) because the events and omissions giving rise to Plaintiff's claims occurred in and emanated from this District.

## PARTIES

4.     Plaintiff Robert Hightower is a resident and citizen of Russia, Ohio which is located in Shelby County Ohio.. Plaintiff Hightower is a former employee of Defendant Trimble.

5.     Defendant Trimble is a Delaware Corporation with its principal place of business at 10368 Westmoor Dr, Westminster, Colorado 80021. The registered agent for service of process is The Corporation Company, 1675 Broadway, Suite 1200, Denver, Colorado 80202.

6.     Defendant Trimble used Oracles EBS software to store and maintain current and former employees' private information.

7.     Defendant Oracle Corporation is a corporation incorporated in Delaware and with its principal place of business at 2300 Oracle Way, Austin, Texas 78741. The registered agent for service of process is Corporation Service Company dba CSC - Lawyers Incorporating Service

## FACTUAL ALLEGATIONS

8.     Defendant Oracle is the worlds largest database management company and provides software and cloud computing software services to companies across the United States, including Oracle's E-Business Suite ("EBS").

9.     Oracle's EBS is a comprehensive suite of business applications for managing operations like financials, supply chain, human resources, and procurement.[1]

10.     Upon information and belief, Trimble is an enterprise consumer of Oracle and uses Oracle's software for business and commercial purposes.

---

[1] https://www.oracle.com/applications/ebusiness/ (last accessed November 25, 2025).

11.     As part of their business, Defendants receive and maintain the personally identifiable information ("PII") of thousands of Trimble's current and former employees.

12.     In order to become an employee of or obtain certain employment-related benefits from Trimble, Plaintiff and Class Members were required to provide sensitive and confidential PII, including their names, dates of birth, Social Security numbers, addresses, contact information, financial account information, health insurance information, and other sensitive information.

13.     The information held by Trimble in the EBS software at the time of the Data Breach included the unencrypted PII of Plaintiffs and Class Members.

14.     This PII was acquired by the cyber-criminal gang Cl0p who perpetrated the attack and remains in the hands of those cyber-criminals.[2]

15.     Upon information and belief, Trimble made promises and representations to its employees, including Plaintiff and Class Members, that the PII collected from them as a condition of their employment would be: 1) kept safe and confidential; 2) that the privacy of that information would be maintained; and 3) that Trimble would delete any sensitive information after it was no longer required to maintain it.

16.     Plaintiff and Class Members provided their PII to Defendants with the reasonable expectation and on the mutual understanding that Defendants would comply with their obligations to keep such information confidential and secure from unauthorized access.

17.     Defendants had a duty to adopt reasonable measures to protect the PII of Plaintiff and Class Members from involuntary disclosure to third parties.

---

[2] https://cloud.google.com/blog/topics/threat-intelligence/oracle-ebusiness-suite-zero-day-exploitation (last accessed November 25, 2025).

18.    Defendants had obligations created by FTC Act, contract, industry standards, and representations made to Plaintiff and Class Members, to keep their PII confidential and to protect it from unauthorized access and disclosure.

19.    Defendants derived substantial economic benefit from collecting Plaintiff's and Class Members' PII. Without the required submission of PII, Defendants could not perform the services they provided.

20.    By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' PII, Defendants assumed legal and equitable duties and knew or should have known that they were responsible for protecting Plaintiff's and Class Members' PII from disclosure.

21.    Defendants had a duty to adopt reasonable measures to protect the PII of Plaintiffs and the Class Members from involuntary disclosure to third parties.

22.    Despite recognizing its duty to do so, on information and belief, Defendants had not implemented reasonable cybersecurity safeguards or policies to protect Plaintiff and the Class Members' PII.

### *The Data Breach*

23.    In September 2025, Oracle EBS users received extortion emails from the cybercriminals claiming a data breach of Oracle's EBS system.[3]

24.    The email campaign, which involved extortion emails being sent to executives at dozens of organizations, is believed to have been conducted by a cluster of a profit-driven threat actor tracked as FIN11.

25.    The notorious cybergang, Cl0p, has already claimed responsibility for the Data Breach. Cl0p was previously linked by the cybersecurity community to FIN11 and the decision to use it as the

---

[3] Lawrence Abrams, *Clop Extortion Emails Claim Theft of Oracle E-Business Suite Data*, (Oct. 1, 2025), https://www.bleepingcomputer.com/news/security/clop-extortion-emails-claim-theft-of-oracle-e-business-suite-data/ (last visited Nov. 24, 2025).

public-facing entity for the campaign was likely motivated by it prior involvement in similar high-impact campaigns targeting customers of Cleo, MOVEit, and Fortra file transfer products.

26.    Cl0p was able to obtain hundreds of gigabytes of files from different EBS users, yet Defendants have not yet announced the Data Breach or its dates and details of the root cause.

27.    Without these details, Plaintiff and Class Members' ability to mitigate the harms resulting from the Data Breach is severely diminished.

28.    Upon information and belief, the mechanism of the cyberattack and potential for improper disclosure of Plaintiff's PII was a known risk to Defendants, and thus, Defendants were on notice that failing to take steps necessary to secure the PII from those risks left the data in a dangerous condition.

29.    The Data Breach was a direct result of Defendants' failure to implement an information security program designed to: (a) to ensure the security and confidentiality of customer information; (b) to protect against anticipated threats or hazards to the security or integrity of that information; and (c) to protect against unauthorized access to that information that could result in substantial harm or inconvenience to any customer.

30.     An information security program encompasses the administrative, technical, or physical safeguards used to access, collect, distribute, process, protect, store, use, transmit, dispose of, or otherwise handle customer information. Had Defendants implemented an information security program consistent with industry standards and best practices, it could have prevented the Data Breach.

31.    As a result of the Data Breach, Plaintiff has suffered an actual injury, similar to an intangible harm remedied at common law. Defendants' failure to implement an information security program resulted in the unauthorized disclosure of Plaintiff's private information to cybercriminals. The unauthorized disclosure of Plaintiff's PII constitutes an invasion of a legally

protected privacy interest, that is traceable to the Defendant's failure to adequately secure the PII in its custody, and has resulted in actual, particularized, and concrete harm to the Plaintiff. The injuries Plaintiff suffered, as described herein, can be redressed by a favorable decision in this matter.

32.    Defendants have not provided any assurances that: all data acquired in the Data Breach, or copies thereof, have been recovered or destroyed; or, that Defendants have modified its data protection policies, procedures, and practices sufficient to avoid future, similar, data breaches.

33.    Defendants' conduct, as evidenced by the circumstances of the Data Breach, has created a substantial risk of future identity theft, fraud, or other forms of exploitation.

34.    The imminent risk of future harm resulting from the Data Breach is traceable to the Defendant's failure to adequately secure the PII in its custody, and has created a separate, particularized, and concrete harm to the Plaintiff.

35.    More specifically, the Plaintiff's exposure to the substantial risk of future exploitation caused him to: (i) lose time and effort spent responding to the Data Breach; and/or (ii) experience emotional distress associated with reviewing accounts for fraud, changing usernames and passwords or closing accounts to prevent fraud, and general anxiety over the consequences of the Data Breach. The harm Plaintiff suffered can be redressed by a favorable decision in this matter.

36.    Armed with the PII acquired in the Data Breach, data thieves have already engaged in theft and can, in the future, commit a variety of crimes including, opening new financial accounts, taking out loans, using Plaintiff's information to obtain government benefits, file fraudulent tax returns, obtain driver's licenses, and give false information to police during an arrest.

37. As a result of the Data Breach, Plaintiff suffered injuries including, but not limited to: (i) invasion of privacy; (ii) theft of PII; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (iv) loss of benefit of the bargain; (v) statutory damages; (vi) nominal damages; and (vii) the continued and increased risk their PII will be further misused, where: (a) their data remains unencrypted and available for unauthorized third parties to access on the dark web or otherwise; and (b) remains backed up under Defendant's possession or control and is subject to further unauthorized disclosures so long as Defendant fails to implement appropriate and reasonable measures to protect the data.

38. Plaintiff brings this class action lawsuit individually, and on behalf of all those similarly situated, to address Defendant's inadequate data protection practices and for failing to provide timely and adequate notice of the Data Breach.

### *The Data Breach Was Avoidable*

39. Upon information and belief, the mechanism of the cyberattack and potential for improper disclosure of Plaintiff's PII was a known risk to Defendants, and thus, Defendants were on notice that failing to take steps necessary to secure the PII from those risks left the data in a dangerous condition.

40. Upon information and belief, the Data Breach was a direct result of Defendants' failure to: (i) identify risks and potential effects of collecting, maintaining, and sharing personal information; (ii) adhere to its published privacy practices; (iii) implement reasonable data protection measures for the collection, use, disclosure, and storage of personal information; and/or (iv) ensure its third-party vendors were required to implement reasonable data protection measures consistent with Defendants' data protection obligations.

41.    Upon information and belief, the Data Breach occurred because Defendants'
information repositories were improperly secured, which permitted an unauthorized party to access
Plaintiff's sensitive personal data.

42.    To detect and prevent the Data Breach, Defendants could and should have
implemented the following measures:

Reasonable Safeguards

a.    Encrypt sensitive information that you send to third parties over public networks
(like the internet) and encrypt sensitive information that is stored on your computer
network, laptops, or portable storage devices used by your employees. Consider
also encrypting email transmissions within your business.

b.    Periodically review accounts and privileges for critical and sensitive information
repositories. Ensure that repositories such as cloud-hosted databases are not
unintentionally exposed to the public and permit only necessary and authorized
hosts to access them.

c.    Implement multifactor authentication.

d.    Implement data retention policies to automate periodically archiving and/or
deleting data that is no longer needed.

e.    Manage the use of privileged accounts based on the principle of least privilege: no
users should be assigned administrative access unless absolutely needed; and those
with a need for administrator accounts should only use them when necessary.

f.    Configure access controls—including file, directory, and network share
permissions— with least privilege in mind. If a user only needs to read specific
files, the user should not have write access to those files, directories, or shares.

g.    Develop and publish policies that define acceptable information to be stored in
repositories.

h.    Regularly patch critical vulnerabilities in operating systems, software, and
firmware on devices. Consider using a centralized patch management system.

i.    Check expert websites (such as www.us-cert.gov) and your software vendors'
websites regularly for alerts about new vulnerabilities and implement policies for
installing vendor-approved patches to correct problems.

j.    Assess the vulnerability of each connection to commonly known or reasonably
foreseeable attacks. Depending on your circumstances, appropriate assessments
may range from having a knowledgeable employee run off-the-shelf security
software to having an independent professional conduct a full-scale security audit.

k. Scan computers on your network to identify and profile the operating system and open network services. If you find services that you don't need, disable them to prevent hacks or other potential security problems.

l. Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

m. Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email.

n. Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

o. Configure firewalls to block access to known malicious IP addresses.

p. Set anti-virus and anti-malware programs to conduct regular scans automatically.

q. Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

r. Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

s. Consider disabling Remote Desktop protocol (RDP) if it is not being used.

t. Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

u. Execute operating system environments or specific programs in a virtualized environment.

v. Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.

w. Conduct an annual penetration test and vulnerability assessment.

x. Secure your backups.[4]

y. Identify the computers or servers where sensitive personal information is stored.

z. Identify all connections to the computers where you store sensitive information. These may include the internet, electronic cash registers, computers at your branch offices, computers used by service providers to support your network, digital copiers, and wireless devices like smartphones, tablets, or inventory scanners.

aa. Don't store sensitive consumer data on any computer with an internet connection unless it's essential for conducting your business.

---

[4] *How to Protect Your Networks from Ransomware*, at p.3, https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view (last accessed November 25, 2025).

bb. Regularly run up-to-date anti-malware programs on individual computers and on servers on your network.

cc. Restrict employees' ability to download unauthorized software. Software downloaded to devices that connect to your network (computers, smartphones, and tablets) could be used to distribute malware.

dd. To detect network breaches when they occur, consider using an intrusion detection system.

ee. Create a "culture of security" by implementing a regular schedule of employee training. Update employees as you find out about new risks and vulnerabilities.

ff. Tell employees about your company policies regarding keeping information secure and confidential. Post reminders in areas where sensitive information is used or stored, as well as where employees congregate.

gg. Teach employees about the dangers of spear phishing—emails containing information that makes the emails look legitimate. These emails may appear to come from someone within your company, generally someone in a position of authority. Make it office policy to independently verify any emails requesting sensitive information.

hh. Before you outsource any of your business functions investigate the company's data security practices and compare their standards to yours.[5]

43.    The Federal Trade Commission's Standards for Safeguarding Customer Information (the "Safeguards Rule") 16 CFR §314, requires covered financial institutions to develop, implement, and maintain an information security program with administrative, technical, and physical safeguards designed to protect customer information. The primary requirements of an information security program are:

a. Designate a qualified individual to implement and supervise the information security program.

b. Conduct an assessment to determine foreseeable risks and threats – internal and external – to the security, confidentiality, and integrity of customer information.

c. Design and implement safeguards to control the risks identified through the risk assessment.

d. Regularly monitor and test the effectiveness of the chosen safeguards.

e. Provide staff with security awareness training and schedule regular refreshers.

---

[5]    *Protecting Personal Information: A Guide for Business*, https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business (last accessed November 25, 2025).

    f.   Select service providers with the skills and experience to maintain appropriate safeguards. Include security expectations in vendor contracts, monitor the service provider's work, and provide for periodic reassessments of their suitability.

    g.   Ensure the information security program remains current. It should reflect changes to operations, changes based on information gained from risk assessments, changes due to emerging threats, changes in personnel, and changes necessitated by other circumstances that may have a material impact on the information security program.

    h.   Create a written incident response plan.

    i.   Require the "Qualified Individual" to report to the Board of Directors, in writing, at least annually.[6]

44.    Given that Defendants are financial institutions that collected, used, and stored PII, Defendants could and should have identified the risks and potential effects of collecting, maintaining, and sharing personal information.

45.    Without identifying the potential risks to the personal data in Defendants' possession, Defendants could not identify and implement the necessary measures to detect and prevent cyberattacks. The occurrence of the Data Breach indicates that Defendants failed to adequately implement one or more of the above measures, resulting in the Data Breach and the exposure of Plaintiff and the Class Members' PII.

46.    Defendants knew and understood unencrypted PII is valuable and highly sought after by cybercriminals seeking to illegally monetize that data. At all relevant times, Defendants knew, or reasonably should have known, of the importance of safeguarding PII and of the foreseeable consequences that would occur if a data breach occurred, including the significant cost that would be imposed on Plaintiff and the Class Members as a result.

***Plaintiff's Experience***

---

[6] See, https://www.ftc.gov/business-guidance/resources/ftc-safeguards-rule-what-your-business-needs-know. (last accessed November 25, 2025).

47.    Plaintiff Hightower provided Defendant Trimble with his sensitive PII as a condition of employment with Trimble. After Plaintiff provided his PII, Defendants suffered a Data Breach.

48.    Plaintiff is careful about sharing his sensitive Private Information. Plaintiff has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source.

49.    Had Plaintiff been aware that Defendants' computer systems were not secure, he would not have entrusted his personal data to Defendants.

50.    Because of the Data Breach, Plaintiff spent time dealing with the consequences of the Data Breach, which includes time spent self-monitoring his accounts to ensure no fraudulent activity has occurred. This time has been lost forever and cannot be recaptured.

51.    Even with the best response, the harm caused to Plaintiff cannot be undone.

52.    Plaintiff suffered actual injury in the form of damages to and diminution in the value of Plaintiff's Private Information—a form of intangible property that Plaintiff entrusted to Defendants, which was compromised in and because of the Data Breach. Plaintiff suffered lost time, annoyance, interference, and inconvenience because of the Data Breach and have anxiety and increased concerns for the loss of his privacy.

53.    Plaintiff has suffered imminent and impending injury arising from the exacerbated risk of fraud, identity theft, and misuse resulting from their Private Information being placed in the hands of criminals.

54.    Plaintiff has a continuing interest in ensuring that his Private Information, which, upon information and belief, remains backed up in Defendants' possession, is protected, and safeguarded from future breaches.

*Plaintiff and Class Members Sustained Damages in the Data Breach*

55.    Plaintiff Hightower would not have allowed Defendants to maintain his sensitive information if he knew Defendants would not implement reasonable safeguards to protect the data from unauthorized access and disclosure.

56.    Plaintiff Hightower is very careful about maintaining the privacy and security of his PII. Plaintiff Hightower is very concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach. The Data Breach has caused Plaintiff to suffer fear, anxiety, and stress. As a direct and proximate result of the Data Breach, Plaintiff has made reasonable efforts to mitigate the impact of the Data Breach, including by regularly and closely monitoring financial accounts. Plaintiff anticipates spending additional time and/or money to investigate and mitigate the consequences of the Data Breach.

57.    The invasion of the Plaintiff and Class Members' privacy suffered in this Data Breach constitutes an actual, particularized, redressable injury traceable to the Defendant's conduct. As a consequence of the Data Breach, Plaintiff and Class Members sustained monetary damages that exceed the sum or value of $5,000,000.00.

58.    Additionally, Plaintiff and Class Members face a substantial risk of future identity theft, fraud, or other exploitation where their names, social security numbers, and dates of birth were targeted by a sophisticated hacker known for stealing and reselling sensitive data on the dark web. The substantial risk of future identity theft and fraud created by the Data Breach constitutes a redressable injury traceable to the Defendants' conduct.

59.    Furthermore, Plaintiff and Class Members face a substantial risk of future spam, phishing, or other attacks designed to trick them into sharing sensitive data, downloading malware, or otherwise exposing themselves to cybercrime, where their names and contact information were

likely acquired in the Data Breach and potentially released on the dark web. The substantial risk of future exploitation created by the Data Breach constitutes a redressable injury traceable to the Defendant's conduct.

60.    Upon information and belief, a criminal can easily link data acquired in the Data Breach with information available from other sources to commit a variety of fraud related crimes. An example of criminals piecing together bits and pieces of data is the development of "Fullz" packages.[7] With "Fullz" packages, cyber-criminals can combine multiple sources of PII to apply for credit cards, loans, assume identities, or take over accounts.

61.    Given the type of targeted attack in this case, the sophistication of the criminal responsible for the Data Breach, the type of PII involved in the Data Breach, hacker behaviors in prior data breaches, the ability of criminals to link data acquired in the Data Breach with information available from other sources, and the fact that the stolen information has been placed, or will be placed, on the dark web, it is reasonable for Plaintiff and the Class Members to assume that their PII was obtained by, or released to, criminals intending to utilize the PII for future identity theft-related crimes or exploitation attempts.

62.    The substantial risk of future identity theft, fraud, or other exploitation that Plaintiff and Class Members face is sufficiently concrete, particularized, and imminent that it necessitates the present expenditure of funds to mitigate the risk. Consequently, Plaintiff and Class Members have spent, and will spend additional time in the future, on a variety of prudent actions to understand and mitigate the effects of the Data Breach.

---

[7] "Fullz" is term used by cybercriminals to describe "a package of all the personal and financial records that thieves would need to fraudulently open up new lines of credit in a person's name." A Fullz package typically includes the victim's name, address, credit card information, social security number, date of birth, bank name, routing number, bank account numbers and more. *See, e.g.*, Brian Krebs, *Medical Records for Sale in Underground Stolen From Texas Life Insurance Firm*, Krebs on Security (Sep. 18, 2014), https://krebsonsecurity.com/2014/09/medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-firm  (last accessed November 25, 2025).

63.     For example, the Federal Trade Commission has recommended steps that data breach victims take to protect themselves and their children after a data breach, including: (i) contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for seven years if someone steals their identity); (ii) regularly obtaining and reviewing their credit reports; (iii) removing fraudulent charges from their accounts; (iv) closing new accounts opened in their name; (v) placing a credit freeze on their credit; (vi) replacing government-issued identification; (vii) reporting misused Social Security numbers; (viii) contacting utilities to ensure no one obtained cable, electric, water, or other similar services in their name; and (ix) correcting their credit reports.[8]

64.     As a consequence of the Data Breach, Plaintiff and Class Members sustained or will incur monetary damages to mitigate the effects of an imminent risk of future injury. The retail cost of credit monitoring and identity theft monitoring can cost around $200 a year. The cost of dark web scanning and monitoring services can cost around $180 per year.

65.     As a result of the Data Breach, Plaintiff and Class Members' PII, which has an inherent market value in both legitimate and illegitimate markets, has been damaged and diminished by its unauthorized release. However, this transfer of value occurred without any consideration paid to Plaintiff or Class Members for their property, resulting in an economic loss. Moreover, the PII is now readily available, and the rarity of the data has been lost, thereby causing additional loss of value.

66.     Personal information is of great value, in 2019, the data brokering industry was worth roughly $200 billion.[9] Data such as name, address, phone number, and credit history has

---

[8] *See* Federal Trade Commission, *Identity Theft.gov*, https://www.identitytheft.gov/Steps (last accessed November 25, 2025).
[9]     *Column: Shadowy data brokers make the most of their invisibility cloak*, https://www.latimes.com/business/story/2019-11-05/column-data-brokers (last accessed November 25, 2025).

been sold at prices ranging from $40 to $200 per record.[10] Sensitive PII can sell for as much as $363 per record.[11]

67.    Furthermore, as a condition of employment with Defendant, Plaintiff and Class Members were required to give their sensitive and confidential PII to Defendants.

68.    Defendants retain and store this information and derive a substantial economic benefit from the PII that it collects.

69.    But for the collection of Plaintiff's and Class Members' PII, Defendants would not be able to perform their services.

70.    By obtaining, collecting, and storing the PII of Plaintiff and Class Members, Defendants assumed legal and equitable duties and knew or should have known that they were responsible for protecting the PII from disclosure.

71.    Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII and relied on Defendants to keep their PII confidential and maintained securely, to use this information for business purposes only, and to make only authorized disclosures of this information.

72.    However, Defendants failed to prevent this Data Breach by failing to properly secure and encrypt the files and file servers containing the PII of Plaintiff and Class Members.

73.    Accordingly, through this Complaint, Plaintiff seeks redress individually, and on behalf of all similarly situated individuals, for the damages that resulted from the Data Breach.

---

[10] *In the Dark*, VPNOverview, 2019, available at: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last accessed November 25, 2025).

[11] *See, e.g.,* John T. Soma, et al, Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

## CLASS ALLEGATIONS

74.     Plaintiff brings this nationwide class action individually, and on behalf of all similarly situated individuals, pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

75.     The Class that Plaintiff seeks to represent is defined as follows:

**Nationwide Class:** All individuals residing in the United States whose PII was accessed and acquired by an unauthorized party as a result of a Data Breach (the "Class" or "Class Members").

76.     Excluded from the Classes are the following individuals and/or entities: Defendants and Defendants' parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

77.     Plaintiff reserves the right to amend the definitions of the Classes or add a Class or Subclass if further information and discovery indicate that the definitions of the Classes should be narrowed, expanded, or otherwise modified.

78.     <u>Numerosity</u>: The members of the Classes are so numerous that joinder of all of them is impracticable. While the exact number of Class Members is unknown to Plaintiff at this time and such number is exclusively in the possession of Defendant.

79.     Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting solely individual members of the Classes. The questions of law and fact common to the Classes that predominate over questions which may affect individual Class Members, includes the following:

   a.  Whether and to what extent Defendant had a duty to protect the PII of Plaintiff and Class Members;

b.  Whether Defendants had a duty not to disclose the PII of Plaintiff and Class Members to unauthorized third parties;

c.  Whether Defendants failed to adequately safeguard the PII of Plaintiff and Class Members;

d.  Whether Defendants required its third-party vendors to adequately safeguard the PII of Plaintiff and Class Members;

e.  When Defendants actually learned of the Data Breach;

f.  Whether Defendants adequately, promptly, and accurately informed Plaintiff and Class Members that their PII had been compromised;

g.  Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

h.  Whether Defendants adequately addressed and fixed the practices, procedures, or vulnerabilities which permitted the Data Breach to occur;

i.  Whether Plaintiff and Class Members are entitled to actual damages, statutory damages, and/or nominal damages as a result of Defendants' wrongful conduct;

j.  Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and ongoing harm faced as a result of the Data Breach.

80.     <u>Typicality</u>: Plaintiff's claims are typical of those of the other members of the Classes because Plaintiff, like every other Class Member, was exposed to virtually identical conduct and now suffers from the same violations of the law as each other member of the Classes.

81.     <u>Policies Generally Applicable to the Class</u>: This class action is also appropriate for certification because Defendants acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Classes as a whole. Defendants' policies challenged herein apply to and affect Class Members uniformly and Plaintiff challenges of these policies hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

82.     <u>Adequacy</u>: Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that Plaintiff has no disabling conflicts of interest that would be antagonistic to those of the other Class Members. Plaintiff seeks no relief that is antagonistic or adverse to the

Class Members and the infringement of the rights and the damages suffered are typical of other Class Members. Plaintiff has retained counsel experienced in complex class action and data breach litigation, and Plaintiff intends to prosecute this action vigorously.

83.    <u>Superiority and Manageability</u>: The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendants. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

84.    The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief for the wrongs alleged because Defendants would necessarily gain an unconscionable advantage since Defendants would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

85. The litigation of the claims brought herein is manageable. Defendants' uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

86. Adequate notice can be given to Class Members directly using information maintained in Defendants' records.

87. Unless a Class-wide injunction is issued, Defendants may continue in its failure to properly secure the PII of Class, Defendants may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Defendants may continue to act unlawfully as set forth in this Complaint.

88. Further, Defendants have acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class- wide basis.

89. Likewise, the following issues are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such issues include, but are not limited to:

a. Whether Defendants owed a legal duty to Plaintiff and the Class to exercise due care in collecting, sharing, storing, and safeguarding their PII;

b. Whether Defendants' (or their vendors') security measures were reasonable in light of industry best practices;

c. Whether Defendants' (or their vendors') failure to institute adequate data protection measures amounted to negligence;

d. Whether Defendants failed to take commercially reasonable steps to safeguard consumer PII;

e. Whether Defendants made false representations about their data privacy practices and commitment to the security and confidentiality of customer information; and

f. Whether adherence to FTC recommendations and best practices for protecting personal information would have reasonably prevented the Data Breach.

## CAUSES OF ACTION

### COUNT 1: NEGLIGENCE/WANTONNESS

90.     Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

91.     Defendants require their customers to submit PII in the ordinary course of providing products or services.

92.     Defendants gathered and stored the PII of Plaintiff and Class Members as part of its business. Plaintiff and Class Members entrusted Defendants with their PII with the understanding that Defendants would adequately safeguard their information.

93.     Defendants had full knowledge of the types of PII it collected and the types of harm that Plaintiff and Class Members would suffer if that data was accessed and exfiltrated by an unauthorized third-party.

94.     By collecting, storing, sharing, and using the Plaintiff's and Class Members' PII for commercial gain, Defendants assumed a duty to use reasonable means to safeguard the personal data it obtained.

95.     Defendants have a duty to develop, implement, and maintain a written information security program designed to protect sensitive information.  The information security program must be appropriate to the size and complexity of the business, the nature and scope of business activities, and the sensitivity of the information at issue.

96.     Defendants' duty included a responsibility to ensure it: (i) implemented reasonable administrative, technical, and physical measures to detect and prevent unauthorized intrusions into its information technology and/or cloud environments; (ii) contractually obligated its vendors to adhere to the requirements of Defendants' privacy policy; (iii) complied with the Safeguards Rule

and other applicable statutes and data protection obligations; (iv) conducted regular privacy assessments and security audits of Defendant's and/or its vendors' data processing activities; (v) regularly audited for compliance with contractual and other applicable data protection obligations; and, (vi) provided timely notice to individuals impacted by a data breach event.

97.     Defendants also had a duty to exercise appropriate clearinghouse practices to remove PII that Defendants were no longer required to retain.

98.     Defendants had a duty to notify Plaintiff and the Class of the Data Breach promptly and adequately. Such notice was necessary to allow Plaintiff and the Class to take steps to prevent, mitigate, and repair any fraudulent usage of their PII.

99.     Defendants violated its common law duty, the Safeguards Rule, and other state consumer protection statutes by failing to implement an information security plan or use reasonable security measures to protect PII. Defendant's violations constitute negligence and/or wantonness.

100.     Defendants breached its duties, and thus was negligent/wanton, by failing to use reasonable measures to protect Plaintiff and Class Members' PII. The specific acts and omissions committed by Defendant include, but are not limited to, the following:

     a.   Failing to designate a qualified individual to implement and supervise its information security program.

     b.   Failing to conduct an assessment to determine foreseeable risks and threats – internal and external – to the confidentiality and integrity of information.

     c.   Failing to design and implement safeguards to control the risks identified through the risk assessment.

     d.   Failing to encrypt personally identifying information in transit and at rest.

     e.   Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' PII.

     f.   Failing to adequately monitor the security of their networks and systems.

     g.   Allowing unauthorized access to PII.

    h.   Failing to detect in a timely manner that PII had been compromised.

    i.   Failing to remove former employees' PII it was no longer required to retain.

    j.   Failing to implement data security practices consistent with Defendants' published privacy policies.

101.    The injuries resulting to Plaintiff and the Class because of Defendants' failure to use adequate security measures was reasonably foreseeable.

102.    Plaintiff was the foreseeable victims of a data breach. Defendants knew or should have known of the inherent risks in collecting and storing PII, the critical importance of protecting that PII, and the necessity of updating, patching, or fixing critical vulnerabilities in its network.

103.    Plaintiff and the Class had no ability to protect the PII in Defendants' possession. Defendants were in the best position to protect against the harms suffered by Plaintiff and the Class as a result of the Data Breach.

104.    But for Defendants' breach of duties owed to Plaintiff and the Class, their PII would not have been compromised. There is a close causal connection between Defendants' failure to implement reasonable security measures to protect the PII of Plaintiff and the Class and the harm, or risk of imminent harm, suffered by Plaintiff and the Class.

105.    As a result of the Data Breach, Plaintiff and Class Members suffered injuries including, but not limited to: (i) invasion of privacy; (ii) theft of their PII; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) statutory damages; (vii) nominal damages; and (viii) the continued and increased risk their PII will be misused, where: (a) their data remains unencrypted and available for unauthorized third parties to access; and (b) remains backed up under Defendant's possession or control and is subject to further unauthorized

disclosures so long as Defendants fail to implement appropriate and reasonable measures to protect the PII.

106.    Plaintiff and Class Members are entitled to compensatory and consequential damages suffered because of the Data Breach.

107.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendants to: (i) strengthen its data protection procedures; (ii) patch all critical vulnerabilities; and (iii) to provide adequate credit monitoring to all affected by the Data Breach.

## COUNT 2: BREACH OF IMPLIED CONTRACT

108.    Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

109.    When Plaintiff and Class Members provided their Private Information to Trimble as a condition of their employment, they entered into implied contracts with Trimble, and Trimble in turn provided that information to Oracle to store and manage within Oracle's software environment, under which both Defendants agreed to reasonably protect such information.

110.    Defendants solicited, offered, and invited Class Members to provide their Private Information as part of Trimble's regular business practices and Oracle's provision of the platform Trimble used to manage employee data. Plaintiff and Class Members accepted Defendants' offers and provided their Private Information to Defendants.

111.    In so doing, Plaintiff and Class Members entered implied contracts with Defendants by which Defendants agreed to use reasonable technical, administrative, and physical safeguards to protect against unauthorized access to, use of, or disclosure of the personal information it collects and stores.

112.    Plaintiff and Class Members provided labor to Trimble with the reasonable belief and expectation that Trimble and Oracle would use part of their earnings to obtain adequate data security. Defendants failed to do so.

113.    Plaintiff and Class Members would not have entrusted their PII to Defendants in the absence of an implied promise to implement reasonable data protection measures.

114.    Plaintiff and Class Members fully and adequately performed their obligations under the implied contract with Defendants.

115.    Defendants breached the implied contract with Plaintiff and Class Members which arose from the course of conduct between the parties, as well as disclosures on the Defendants' web site, privacy policy, and in other documents, all of which created a reasonable expectation that the personal information Defendants collected would be adequately protected and that the Defendants would take such actions as were necessary to prevent unauthorized access to, use of, or disclosure of such information.

116.    As a direct and proximate result of the Defendants' breach of an implied contract, Plaintiff and Class Members suffered injuries including, but not limited to: (i) invasion of privacy; (ii) theft of their PII; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) statutory damages; (vii) nominal damages; and (viii) the continued and increased risk their PII will be misused, where: (a) their data remains unencrypted and available for unauthorized third parties to access; and (b) remains backed up under Defendant's possession or control and is subject to further unauthorized disclosures so long as Defendants fail to implement appropriate and reasonable measures to protect the PII.

117.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendants to: (i) strengthen its data protection procedures; (ii) patch all critical vulnerabilities; and (iii) to provide adequate credit monitoring to all affected by the Data Breach.

## COUNT 3: UNJUST ENRICHMENT

118.    Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

119.    Plaintiff brings this Count in the alternative to the breach of implied contract count above.

120.    Plaintiff and Class Members conferred a monetary benefit on Defendants. They staffed Trimble's business and in so doing provided Defendants with their Private Information. In exchange, Plaintiff and Class Members should have received from Defendants the wages that were the subject of the transaction and appropriate protection for their Private Information.

121.    Defendants knew that Plaintiff and Class Members conferred a benefit which Defendants accepted. Defendants profited from these transactions and used the Private Information of Plaintiff and Class Members for business purposes.

122.    Defendants enriched themselves by saving the costs Defendants reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Personal Information. Rather than providing a reasonable level of security that would have prevented the hacking incident, Defendants instead calculated to increase its own profits at the expense of Plaintiff and Class Members by using cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendants' decision to prioritize its own profits over the requisite security.

123.    Defendants failed to secure Plaintiff's and Class Members' Private Information and thus did not provide full compensation for the benefit Plaintiff and Class Members provided

124.    Defendants acquired the Private Information through inequitable means in that they failed to disclose the inadequate security practices alleged.

125.    If Plaintiff and Class Members knew that Defendants had not reasonably secured their Private Information, they would not have agreed to provide their Private Information to Defendants.

126.    Plaintiff and Class Members have no adequate remedy at law.

127.    As a direct and proximate result of the Defendants' conduct, Plaintiff and Class Members suffered injuries including, but not limited to: (i) actual identity theft; (ii) monetary damages; (iii) lost time attempting to mitigate the actual consequences of the Data Breach; (iv) lost benefit of the bargain; (v) statutory damages; (vi) nominal damages; (vii) emotional distress; and (viii) the continued and increased risk their data will be misused, where: (a) their data remains unencrypted and available for unauthorized third parties to access; and (b) remains backed up under Defendants' possession or control and is subject to further unauthorized disclosures so long as Defendants fail to implement appropriate and reasonable measures to protect the PHI.

128.    As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

129.    Defendants should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that they unjustly received from them.

## COUNT 4: INVASION OF PRIVACY

130.    Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

131.    Plaintiff and Class Members had a legitimate expectation of privacy in their personally identifying information such as their Social Security numbers, dates of birth, and credit scores. Plaintiff and Class Members were entitled to the protection of this information from disclosure to unauthorized third parties.

132.    Defendants owed a duty to Plaintiff and Class Members to keep their PII confidential.

133.    Defendants permitted the public disclosure of Plaintiff and Class Members' PII to unauthorized third parties.

134.    The PII that was disclosed without the proper authorization was highly sensitive, private, and confidential. The public disclosure of the type of PII at issue here would be highly offensive to a reasonable person of ordinary sensibilities.

135.    Defendants permitted its information technology environment to remain vulnerable to foreseeable threats, which created an atmosphere for the Data Breach to occur. Despite knowledge of the substantial risk of harm created by these conditions, Defendants intentionally disregarded the risk, thus permitting the Data Breach to occur.

136.    By permitting the unauthorized disclosure, Defendants acted with reckless disregard for the Plaintiff and Class Members' privacy, and with knowledge that such disclosure would be highly offensive to a reasonable person. Furthermore, the disclosure of the PII at issue was not newsworthy or of any service to the public interest.

137.    Defendants were aware of the potential of a data breach and failed to adequately safeguard its systems and/or implement appropriate policies and procedures to prevent the unauthorized disclosure.

138.    Defendants acted with such reckless disregard as to the safety of Plaintiff and Class Members' PII to rise to the level of intentionally allowing the intrusion upon the seclusion, private affairs, or concerns of Plaintiff and Class Members.

139.    Plaintiff and Class Members have been damaged by the invasion of their privacy in an amount to be determined at trial.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff, individually and on behalf of the other members of the Class alleged herein, respectfully requests that the Court enter judgment as follows:

A.    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff(s) as the representatives for the Class and counsel for Plaintiff(s) as Class Counsel;

B.    For an order declaring the Defendants' conduct violates the statues and causes of action referenced herein;

C.    For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

D.    Ordering Defendants to pay for lifetime credit monitoring and dark web scanning services for Plaintiff and the Class;

E.    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

F.    For prejudgment interest on all amounts awarded;

G.    For an order of restitution and all other forms of equitable monetary relief requiring the disgorgement of the revenues wrongfully retained as a result of the Defendants' conduct;

H.    For injunctive relief as pleaded or as the Court may deem proper; and

I.    For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit, and any other expense, including expert witness fees; and

J.    Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims in this Complaint and of all issues in this action so triable as of right.

DATED: November 25, 2025.                  Respectfully Submitted,

/s/Leigh S. Montgomery
Leigh S. Montgomery
Texas Bar No. 24052214
lmontgomery@eksm.com
**ELLZEY KHERKHER SANFORD**
**MONTGOMERY, LLP**
4200 Montrose Blvd., Suite 200
Houston, Texas 77006
Phone: (888) 350-3931

-AND-

Paul J. Doolittle(*Pro Hac Vice* forthcoming)
**POULIN | WILLEY | ANASTOPOULO**
32 Ann Street
Charleston, SC 29403
Telephone: (803) 222-2222
Fax: (843) 494-5536
Email: paul.doolittle@poulinwilley.com
       cmad@poulinwilley.com

*Attorneys for Plaintiff and Proposed Class*